UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

RANDOLPH SCOTT                                          CASE NO:22-10355
     DEBTOR                                              CHAPTER 13

## MEMORANDUM OPINION

This matter came before the court on March 22, 2023, to consider the application for compensation filed by debtor's attorney, Robert W. Hoke ("Mr. Hoke"). The Chapter 13 Trustee ("Trustee") objected to the application. After hearing oral argument from Mr. Hoke and the Trustee, the court took the matter under advisement but afforded the opportunity for both Mr. Hoke to file post-hearing amendments/supplements to the application (by March 24) and the Trustee to respond a week thereafter (by March 31).[1] This Memorandum Opinion constitutes the court's findings of fact and conclusions of law in support of a separate order granting in part and denying in part Mr. Hoke's application.

### I. FACTS AND PROCEDURAL BACKGROUND

Following at least five continuances of the confirmation hearing, ostensibly designed to give the debtor a chance to present a confirmable plan, it became clear to one and all that no such plan was forthcoming. As a result, Mr. Hoke could not avail himself of the $4,000 "no look" fee he bargained for had the case been confirmed, all as recognized under local standing order.[2] Resigned to that reality, Mr. Hoke filed an Application for Compensation on December 28, 2022,[3] requesting allowance of a reduced fee of $3,600 as supported by a time record exhibit

---

[1] Minute Entry: 3/22/23 Hearing.

[2] Standing Order 2022-2.

[3] Application for Compensation, ¶ 3 [P-50].

reflecting actual fees of $4,515.  In essence, by asking for less than his actual time and expense, Mr. Hoke was testing this district's long-time custom of permitting an informal, uncontested resolution awarding debtor's counsel $2,600 in unconfirmed cases.  The Trustee's original objection[4] noted some block billing entries and claimed excessive time spent at the confirmation hearings.  But the primary gist of the objection related to the application's failure to adhere to this court's custom limiting awards of attorney fees in unconfirmed chapter 13 cases to $2,600.

The crux of Mr. Hoke's argument at the hearing was that the $2,600 limit came into being when the "no look" fee for the district was only $3,000 and therefore should now be raised to keep pace with the current "no look" fee of $4,000 for confirmed cases. Mr. Hoke also contends that the original $400 discount off the "no look" fee recognized the fact that most of the legal work performed to confirm a plan (or not) is completed by the final confirmation hearing.

Mr. Hoke timely filed a Supplemental & Revised Time Record on March 24, 2023 ("Supplement").[5]  The actual itemized fees in the Supplement total $5,747.50, or $1,232.50 more than contained in the original fee application.[6]    While the Supplement does appear to have reduced the time entries for appearing in court to address one of the Trustee's objections, the block billing has been increased substantially.  Specifically, Mr. Hoke lumps 41 phone calls and 26 emails all together in two entries, both ranging in date from June 29, 2022, through March 22, 2023.  These two entries of 4.1 and 3.5 hours respectively, totaling $2,280, contain no descriptions of what was discussed in these client communications, even in broad strokes.

---

[4] Objection [P-54].

[5] Supplemental & Revised Time Record [P-71].

[6] The Supplement reflects additional time spent by Mr. Hoke during the first quarter of 2023 trying to confirm a plan.

The Trustee filed her amended objection on March 31, 2023,[7] re-urging many of the same arguments from the original objection concerning certain questionable time entries and block billing. The Trustee further argues that Judge Dodd made no mention of a change in the customary $2,600 award when he increased the "no look" fee to $4,000 in early 2022 and certainly could have done so in his discretion. Despite her continued objections, the Trustee indicated she would be willing to consent to an award of $3,000 in this case and presumably going forward in future cases, provided of course all such applications support it.

## II. ANALYSIS

11 USC § 329(a) provides:

> Any attorney representing a debtor in a case under [the Bankruptcy Code], or in connection with such a case, whether or not such attorney applies for compensation …, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Mr. Hoke sought compensation for his work on the debtor's case under this section. In doing so, Mr. Hoke followed the procedure laid out in the Local Rules for this court, namely Local Rule 2016-2(b)(2), which allows debtors' attorneys to "choose to receive the prevailing 'no look' fee rather than filing applications for compensation during the first year," and Local Rule 2016-1(c).

Ultimately, Mr. Hoke had no choice but to file an application in hopes of receiving some compensation for his efforts in this failed chapter 13 case. Such applications are governed not by section 329 but rather by section 330(a) of the Bankruptcy Code, which provides in relevant part:

> (a)(1) After notice … and a hearing, … the court may award to … a professional person employed under section 327 …

---

[7] Amended Objection [P-73]. The Trustee also refiled the amended objection on April 3, 2023 [P-75], although the later pleading was filed to correct an obvious scanning error. For present purposes, the court will consider the Trustee's response timely filed.

> (A) reasonable compensation for actual, necessary services rendered by the … attorney …; and
>
> (B) reimbursement for actual, necessary expenses.

The customary arrangement in this district, as mentioned above, has allowed counsel an uncontested fee of $2,600.[8] Accordingly, the issue now is whether this court should reconsider the limits and reasonableness of the customary fee in failed cases.

A little background is helpful. As of February 24, 2022, the amount of the "no look" fee in this district for confirmed cases was raised from $3,000 to $4,000.[9] No mention was made in that order concerning the customary award in failed cases and therefore the failed case awards have remained $2,600. The Trustee does not dispute that the gap between the two routine awards has widened. She simply claims $2,600 is the most this court customarily allows without diving deep into the fee application entry by entry. The Trustee indicates in her amended objection that a bump in the $2,600 award to $3,000 would be acceptable to her.

Mr. Hoke, on the other hand, would have this court increase the upper limit of customary awards in unconfirmed cases to be more in line with the current $4,000 figure. The court agrees with Mr. Hoke, at least in part.

While it is true that both the language of the 2022 "no look" order makes no mention of the custom and no awards of more than $2,600 have been granted since then, neither of those undisputed facts carries the day on what should happen now. The rationale of what became the custom was no doubt to efficiently deal with fee applications in failed chapter 13 cases, allowing

---

[8] As reflected in the common meaning of the term "custom," namely "habitual practice or course of conduct" (*See Custom*, Black's Law Dictionary (6th ed. 1994), the Chapter 13 Trustee has for years routinely not challenged an award of $2,600 in failed cases.

[9] Standing Order 2022-2, Fees of Chapter 13 Debtor's Counsel, pg. 1, January 26, 2022.

for the overwhelming majority of applications to be granted without the need for an actual hearing at all.

The customary $2,600 award represented approximately 87% of the "no look" fee existing at the time the custom originated. That percentage should logically apply as an uncontested award in unconfirmed cases now and going forward. Thus, given the current "no look" fee of $4,000, a well-supported application should allow for a fee of $3,480, which is 87% of $4,000. Of course, this change should not be construed as limiting: (a) an applicant from seeking more compensation if the complexities of the case warrant, (b) the Trustee or any other party in interest from challenging a fee application as unreasonable, or (c) the court's ability to award more or less than 87% of the prevailing "no look" fee under the facts of the case presented.

Mr. Hoke has the burden of proof as to the reasonableness of his fees.[10] He is not trying to recover $5,747.50. Good thing for him, as the block billing entries would not support such an award. Instead, his application seeks 90% of the "no look" fee, which in this court's view, is still a bit too much irrespective of his actual fee application numbers.

Using the 87% rationale described above, Mr. Hoke <u>may</u> be entitled to a reduced fee of $3,480, assuming of course, he can carry his burden of proof demonstrating that such an award is "reasonable" under 11 U.S.C. § 330(a)(1). This court may award less compensation than requested under 11 U.S.C. § 330(a)(2), which provides in pertinent part:

> The court may, on its own motion, …, award compensation that is less than the amount of compensation that is requested.

---

[10] *Caplin & Drysdale Chartered v. Babcock & Wilcox Co. (In re Babcock & Wilcox Co.)*, 526 F.3d 824, 827 (5th Cir. 2008) (quoting *In re WNS, Inc.*, 150 B.R. 663, 664 (Bankr. S.D. Tex. 1993)).

These two subsections of section 330 afford the court broad discretion in awarding fees.[11] Turning to the problematic block billing contained in this application, courts may disallow entirely or reduce compensation depending on the facts and circumstances.[12]

Here, the Trustee urges the court to disallow these two entries entirely. But even if that were done, the actual time and expense would still exceed the customary $2,600 fee by $867.50. Disallowing all time claimed spent communicating with the debtor ($2,280) appears to be too harsh a penalty given the obvious need for attorney-client communications during the pendency of a bankruptcy case. The sheer magnitude of the block billing entries strongly suggests that this debtor perhaps required (or demanded) more communication than most chapter 13 debtors.

This court finds, in its broad discretion, that one hour of telephone calls and one hour of emails over the course of almost nine months, or $600 total, is certainly not unreasonable.[13] Mr. Hoke's actual fee application number should be reduced, for comparative purposes in this case, to roughly $4,080 before considering the Trustee's other suggested reductions. Those suggested reductions total $450, which brings the number down to $3,617. But since Mr. Hoke is only asking for $3,600 and the Trustee seems to now be on board for $3,000, the decision in this case boils down to whether the award should be $3,600; $2,600; $3,000; or something else. For the

---

[11] *Barron & Newburger, P.C. v. Texas Skyline, Ltd. (In re Woerne)r*, 783 F.3d 266, 272, 277 (5th Cir. 2015). *See also Babcock*, 526, F.3d at 828 (quoting *In re Matter of Cano,* 122 B.R. 812, 813 (Bankr N.D. Ga. 1991); *In re Temple Retirement Community,* 97 B.R. 333, 336 (Bankr. W.D. Tex. 1989).

[12] Local Rule 2016-1(b)(6)(iii) requires applications for compensation to be supported by "a detailed listing" of "time spent in increments of no less than tenths of an hour." "Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation [ ... because] the court cannot accurately determine the number of hours spent on any particular task...." *U.S., ex rel., Cook-Reska v. Community. Health System., Inc.*, 641 F. App'x 396, n. 7 (5th Cir. 2016) (quoting *Jane Roe/Rachel v. Rose v. BCE Tech. Corp.,* No. 4:12-CV-1621, 2014 WL 1322979, at *6 (S.D. Tex. Mar. 28, 2014)). *See also Bennetti v. Oxford Restructuring Advisors LLC (In re Cpesax Liquidating, Inc.)*, No. CC-22-1090-FTL, 2022 WL 18067792, at *7 (9th Cir. BAP Dec. 29, 2022); *In re Molina*, 632 B.R. 561, 573 (Bankr. S.D. N.Y 2021) ("A court may also reduce fees sought due to block billing.").

[13] This finding should not be interpreted as either limiting compensation for communications to two hours of attorney time or always permitting that much time in other cases.

reasons stated above, Mr. Hoke is entitled to receive $3,480 as reasonable compensation for his troubles in this case.

Should the "no look" fee increase in the future, which is highly likely at some point, the maximum "customary" fee awarded upon a well-founded application in all unconfirmed cases in this district should in turn increase. So, for example, if the "no look" fee increases to $4,250 in the future, no unconfirmed case would allow for an award of more than $3,700 (4,250 x .87 = $3,697.50, rounded up to $3,700) unless a higher amount is approved after a contested hearing on the actual fees and expenses sought. Finally, to avoid any doubt amongst the local consumer bankruptcy bar, this rationale concerning the "new custom" applies on a prospective basis only.

### III. CONCLUSION

For these reasons, Mr. Hoke's application, as supplemented and amended on March 24, 2023, is approved over the objection and the amended objection of the Trustee, but only for a fee of $3,480, which represents 87% of the current "no look" fee. Going forward in this district, any reference to a "customary" $2,600 fee for debtors' counsel in chapter 13 cases dismissed prior to plan confirmation will be rejected in favor of this new benchmark, designed to be adjustable over time but in no event to exceed 87% of the prevailing "no look" fee, rounded up to the next $5 interval.

Baton Rouge, Louisiana, April 5, 2023.

<u>s/ Michael A. Crawford</u>
MICHAEL A. CRAWFORD
UNITED STATES BANKRUPTCY JUDGE